UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL B. REED,

            Petitioner,            Case No. 07-10719

v.            HON. AVERN COHN

ANDREW JACKSON,

            Respondent.

_____/

**MEMORANDUM AND ORDER ON REMAND
DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

**I. Introduction**

Petitioner Michael B. Reed filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, presenting several claims, including ineffective assistance of counsel. The Court ordered Respondent to file an answer to the petition and the relevant state court documents in accordance with Rule 5 of the Rules Governing Section 2254 cases. (Doc. 4). Thereafter, Respondent filed Rule 5 materials. (Doc. 8). On March 31, 2010, the Court denied the petition for lack of merit. (Doc. 10). Petitioner appealed.

The Court of Appeals for the Sixth Circuit granted a certificate of appealability solely on the issue of whether Petitioner's "counsel provided effective assistance of counsel when counsel failed to challenge [Petitioner's] warrantless arrest." Reed v. Jackson, No. 10-1734 (6th Cir. Mar. 24, 2011). On December 20, 2011, the Sixth Circuit vacated and remanded Petitioner's ineffective assistance of counsel claim for further proceedings, noting that the record did not appear to contain the entire transcript of the

state court evidentiary hearing relating to this claim. Reed v. Jackson, No. 10-1734 (6th Cir. Dec. 20, 2011). The Sixth Circuit stated "[a] remand is necessary so that the district court may determine, on the basis of the entire state court record, whether the Michigan courts' resolution of this issue was an unreasonable application of Supreme Court precedent." Id. at 4. The record has been supplemented with the relevant transcripts. (Doc.18). The Court directed the filing of supplemental papers, (Doc. 22), and the supplemental papers have been received. (Docs. 25 30). The matter is now ready for decision. After reviewing the relevant portions of the state court record and supplemental briefs, the Court again denies Petitioner's application for habeas relief.

## II. Factual Background

Petitioner's conviction arises from the robbery and shooting death of Guy Colbert, a suspected drug dealer. Petitioner was tried jointly but before separate juries with his co-defendant, Edward Brown. Brown admitted to law enforcement officers that he committed the crime along with a person that he thought was named Michael Murray. Brown directed the police to the house where he knew his accomplice lived. When the police arrived at the house, they were told that nobody named Michael Murray resided there, but a different man named Michael Reed lived there. Brown described his accomplice as being a 6'3" or 6'4", 170 lbs., light complexioned black man. Petitioner is 5'11", 210 lbs., and is a medium complexioned black man.

Petitioner was placed in custody. He was subsequently questioned by the police and confessed to participating in the robbery and shooting, and he informed the police where they could find the murder weapon.

Following his conviction, Petitioner filed a motion for new trial, asserting among

2

other claims that his trial counsel was ineffective for failing to challenge the legality of his arrest and the admissibility of his confession that was taken as a result of his arrest. The trial court held an evidentiary hearing on the claim, at which the following testimony was presented.

Petitioner's trial counsel, Marvin Barnett, testified that he received a discovery package showing Detroit Police Homicide detectives obtained a statement from co-defendant Edward Brown before Petitioner was arrested. Tr., 1-11-02, 65-66. Brown's statement referred to an accomplice by the name of Michael Murray. Id., 66. Barnett said he did not recall specifically determining whether Petitioner's arrest was supported by probable cause, but that he was sure he considered the issue as he would in any case. Id., 68, 78.

Barnett indicated familiarity with the proposition that if someone is arrested without probable cause that it creates the possibility that evidence obtained after the arrest can be suppressed. Id., 72. Barnett testified that after "a long and considered detailed analysis" he decided not to challenge the admissibility of Petitioner's statement to police. Id., 73. Barnett explained that the statement both hurt and helped Petitioner. He did not think Petitioner would be able to withstand cross-examination, and he could use portions of the statement to support a self-defense claim. Id., 89-90 ; see Trial Tr. 8/30/00,153.

Petitioner testified at the hearing that when he was arrested the police asked him if he was Michael Murray. Tr., 1-14-02, 26-27. Petitioner said he was not and that his name was Michael Reed. Id., 27.

Investigator Terrell Shaw testified at the hearing that he was involved with

arresting Petitioner. Tr., 1-20-02, 4. Co-defendant Brown led the police to 14696 Petosky indicating this was where his accomplice lived. Id., 5, 10, 24. Shaw only remembered looking for someone named "Michael." Id., 7. After Petitioner was arrested he told Shaw they would find the gun at the Petosky address. Id., 9. When Shaw arrived at the house on Petosky he met a woman and asked if there was a Michael Murray there, and the woman said there was a Michael. Id., 11. Petitioner came out of the house and was arrested. Id., 11-12. Shaw returned to the house on Petosky later that night and found the gun under a milk crate. Id., 11-12.

Investigator James Fisher recalled that Brown turned himself in and confessed, and on the basis of part of the confession he went to a house on Petosky looking for the person that Brown said had been with him. Id., 17-18. Fisher said that Brown was not certain of the last name but he did recall where his accomplice lived. Id., 18, 22. On cross-examination, Fisher acknowledged that Brown's statement named Michael Murray as the accomplice without equivocation, but his recollection was that Brown was not certain of the last name. Fisher sais he was more interested in locating the man at the address given by Brown, rather than the name. Tr., 1-22-02, 24.

Based on this testimony, the trial court found that Petitioner's trial counsel was not ineffective for failing to challenge the legality of Petitioner's arrest, stating in relevant part:

> The paramount issue in the instant case is whether the police had probable cause to arrest defendant without a warrant. The Federal court has treated this issue in U.S. v. Hurston, 12 F. Supp. 2d 630 (E.D. Mich. 1998), where it held that the issue before the Court is not whether the officer's state of mind in arresting a defendant provides the legal justification for the arrest, but whether the circumstances, viewed objectively, justified the arrest. See Whren v. U.S., 517 U.S. 806 (1996).

The mere suspicion of illegality is not sufficient to establish probable cause. Hurston at 635. There is, of course, a requirement that the officers be able to articulate concrete facts from which they infer a probability that illegality has occurred. See United States v. Bennett, 905 F.2d 931,934 (6th Cir. 1990) (emphasis added).

Further, the Michigan Court of Appeals held in People v. Casey, 102 Mich. App. 595 (1980), that an, investigatory arrest is an illegal arrest. It is an admission that probable cause to arrest does not exist. Citing People v. Martin, 94 Mich. App. 649, 653 (1980), Brown v. Illinois, 422 U.S. 590 (1975). Probable cause to arrest exists when the facts and circumstances within the officer's knowledge are sufficient to a prudent person, or one of reasonable caution, to believe that the suspect has committed or is committing a felony. People v. Lewis, 160 Mich. App. 20, 25 (1987). Where there is no probable cause to arrest, but the police take a defendant in custody for investigatory purposes, any evidence obtained as a result of that unlawful detention or any statements made must be suppressed. Id.

This court finds there were concrete facts that indicated defendant was the perpetrator. The fact that his name was Michael, although the last name was in question, and the fact that he was a resident of the home where Brown lead the police and reported as the home of perpetrator was sufficient to establish probable cause. Given the totality of the facts available to police, the suspicion that defendant was the same person, was a reasonable one. There was no violation of the Fourth Amendment. This is supported by the Supreme Court's decision in Hill v. California, 401 U.S. 797 (1971), where probable cause to arrest without a warrant was found when police reasonably misidentified and arrested defendant's roommate because the roommate was found in defendant's apartment and roughly fit the description of defendant, hence the search incident to the arrest of the roommate was legal.

Further, this Court would refrain from per se exclusion of the statements and gun as tainted fruit. The Court in Illinois v. Brown requires an inquiry as to whether an illegal arrest has been sufficiently purged as to render the confession outside the per se exclusionary rule. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, see Johnson v. Louisiana, 406 U.S. 356, 365 (1972), and, particularly, the purpose and flagrancy of the official misconduct are all relevant. See Wong Sun, at 491. The mere fact of an illegal arrest does not per se require the suppression of a subsequent confession. It is only when an "unlawful detention has been employed as a tool to directly procure any type of evidence from a detainee" that the evidence is suppressed under the exclusionary rule. People v. Mallory, 421 Mich. 229

(1984). Hence, defendant would have to demonstrate that the time' which elapsed prior to the Simon statement, at least, had not purged the taint. Further, defendant would have to show that the independent consent to search given by Deason at the home, coupled with the fact that the gun was found in a place other than where defendant directed, has not purged the evidence of taint. Defendant has made no such showing.

      *      *      *

Defendant avers that failure of defendant's counsel to make a timely motion to suppress the statements made to police and the gun is evidence of ineffectiveness. Thorough and deliberate review of the record indicate[s] defendant's position is not meritorious. Having found that the arrest was supported by probable cause, that defendant voluntarily gave the statements, and that evidence of the gun would not have been suppressed, this Court concluded the motion for suppression would have been denied. Since a motion to suppress the confession would not have succeeded, defendant's counsel was not guilty of ineffective assistance for choosing not to file such a motion.

People v. Reed, Wayne Circuit No. 99-11015, Opinion, 4-6; 8-9 (December 9, 2003).

Petitioner raised the issue again on appeal in the Michigan Court of Appeals. That Court rejected the claim on the merits as follows:

In this case, evidentiary hearing testimony established that a codefendant informed police that a person named "Michael Murray" was the shooter, but the codefendant admitted that he was not certain of this other person's last name. Still, the codefendant gave a physical description of the person, knew where he lived, and led police to the person's house. There, the police found defendant, whose first name is Michael, and arrested him. While defendant did not exactly match the description given by the codefendant, he was of the approximate age, he had the same first name, and he was present at the home identified by the codefendant. This was sufficient to provide probable cause for defendant's arrest. Therefore, trial counsel was not ineffective for failing to challenge the evidence on this ground.

People v. Reed, No. 231665, 2004 WL 2412714 (Mich. Ct. App. Oct. 28, 2004).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same argument that trial counsel had been ineffective

6

for not challenging his warrantless arrest. The Michigan Supreme Court denied the application by form order. People v. Reed, 474 Mich. 1067 (2006) (table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against

extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

### III. Discussion

Petitioner claims that his counsel was ineffective for failing to challenge the legality of his arrest. "The Fourth Amendment forbids 'unreasonable searches and seizures,' and this usually requires the police to have probable cause or a warrant before making an arrest." Herring v. United States, 555 U.S. 135, 136 (2009). Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances "were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). "The validity of the arrest does not depend on whether the suspect actually committed a crime . . . ." Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). Because the state courts denied the claim on the merits after holding a hearing, review is limited.

First, in Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that

9

counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. Id.

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. Strickland, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. Id. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. Id. at 689.

To satisfy the prejudice prong under Strickland, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. Id. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Id. at 686.

Moreover, the Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state

10

appellate courts reviewing their performance. "The standards created by Strickland and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Harrington, 131 S.Ct. at 788 (internal and end citations omitted). "When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. Id.

Viewed under this standard, Petitioner has not demonstrated entitlement to habeas relief because a reasonable argument can certainly be made that counsel satisfied Strickland's deferential standard. Nothing in the transcripts of the state evidentiary hearing alters this Court's previous determination that Petitioner's claim is without merit. Indeed, the record shows that the trial court carefully considered the issue and explained in detail its conclusion that trial counsel was not ineffective. The Michigan Court of Appeals likewise considered the issue and concluded the same. Neither decision, which was based on a full examination of the record, was unreasonable.

Here, Petitioner's co-defendant confessed to police and told them that he committed the crime with someone named Michael Murray who lived at a particular address. The police went to the address and found a Michael Reed who, despite some differences, fit the general description of the man described by the codefendant. The police did not lack probable cause simply because of the difference in last name. Hill v. California, 401 U.S. 797, 802 (1971). Indeed, the officers at the evidentiary hearing indicated that the co-defendant was not certain of his accomplice's last name, but was certain of the address in which he lived.

11

Under these circumstance it is difficult to image a law enforcement officer leaving the address without arresting Petitioner simply because he had a different last name than the one given to them by an accomplice. Courts have held that it is reasonable for the police to "rely on facially valid arrest warrants even in the face of vehement claims of innocence by reason of mistaken identity, or otherwise." Masters v. Crouch, 872 F.2d 12481253 (6th Cir. 1989), citing Baker v. McCollan, 443 U.S. 137, 145 (1979). Further, any "discrepancies, between an arrest warrant and the arrestee's physical appearance, address, and birth date, are often insufficient to create a genuine issue of factual dispute about whether arresting officers had probable cause." Tibbs v. City of Chicago, 469 F.3d 661, 664 (7th Cir. 2996).

Therefore, because Petitioner's claim that his arrest was not supported by probable cause does not have merit, it follows that he cannot prevail on his ineffective assistance of counsel claim. Joshua v. DeWitt, 341 F.3d 430, 443 (6th Cir. 2003). At a minimum, in light of the evidence presented at the state court hearing, the decision of the state courts that Petitioner's claim was without merit was a reasonable one. Therefore, the petition will again be denied on this claim.

### IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473 (2000). Reasonable jurists could

not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

## V. Conclusion

For the reasons stated above, the state court's conclusion that Petitioner was not denied the effective assistance of counsel regarding counsel's decision to not challenge his arrest is neither contrary to Supreme Court precedent nor an unreasonable determination of the facts. Petitioner is therefore not entitled to habeas relief on this claim. Accordingly, the petition is DENIED. The Court also DENIES a certificate of appealability.

SO ORDERED.

                                  s/Avern Cohn
                                  AVERN COHN
                                  UNITED STATES DISTRICT JUDGE

Dated: October 21, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 21, 2013, by electronic and/or ordinary mail.

                                  S/Sakne Chami
                                  Case Manager, (313) 234-5160